**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., | Case No. 18-cv-04461 |
| Plaintiff, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiff Entertainment One UK Ltd. ("eOne" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Online Marketplace

Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products, including children's clothing, toys and other goods, using counterfeit versions of eOne's federally registered trademarks, unauthorized copies of eOne's federally registered copyrighted designs, or both (collectively, the "Unauthorized Peppa Pig Products"). Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold Unauthorized Peppa Pig Products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused eOne substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by eOne to combat online counterfeiters who trade upon eOne's reputation and goodwill by selling and/or offering for sale Unauthorized Peppa Pig Products. The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Peppa Pig products, while actually selling Unauthorized Peppa Pig Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Unauthorized Peppa Pig Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation. eOne is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered

copyrighted designs, as well as to protect unknowing consumers from purchasing Unauthorized Peppa Pig Products over the Internet. eOne has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Entertainment One UK Ltd. is a limited company having its principal place of business in the United Kingdom.

5. eOne is a global independent studio that specializes in the development, acquisition, production, financing, distribution and sales of entertainment content. eOne's diversified expertise spans across film, television and music production and sales, family programming, merchandising and licensing, and digital content. Through its global reach and expansive scale, powered by deep local market knowledge, eOne delivers the best content to the world.

6. Peppa Pig is a preschool animated television series directed and produced by Astley Baker Davies in association with eOne, which originally aired in May 2004 and re-premiered in February 2015. Since 2015, four seasons have been aired, with a fifth airing. With over 1000 licensees around the world, Peppa Pig is a top performing global preschool property that has been translated into over 40 languages and broadcast in over 180 territories. Peppa Pig has won three British Academy of Film and Television Arts or BAFTA Awards for pre-school animation. With a pipeline of new episodes delivering fresh content through the end of 2021, the global phenomenon continues to look bright for eOne's popular little piggy.

7.     In addition to episode DVDs, a variety of licensed Peppa Pig products are available, including video games and other toys such as playsets, playing cards, vehicles, and stuffed toys, household items such as bathroom products, stationery, and bed linens, food, drinks, clothing, and jewelry (collectively, the "Peppa Pig Products").

8.     Peppa Pig Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Peppa Pig Products are instantly recognizable as such.  The Peppa Pig brand has become a global success that resonates with children worldwide, and Peppa Pig Products are among the most recognizable in the world.  Peppa Pig Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Kmart, and Wal-Mart.

9.     Long before Defendants' acts described herein, eOne launched the Peppa Pig television show and its related line of Peppa Pig Products bearing its now famous PEPPA PIG

mark,  mark, and various copyrighted designs (the "Peppa Pig Copyrighted Designs").

10.     eOne has used the PEPPA PIG and other trademarks for many years and has continuously sold products under the PEPPA PIG and other trademarks (collectively, the "PEPPA PIG Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the PEPPA PIG Trademarks.  eOne's use of the marks has also built substantial goodwill in and to the PEPPA PIG Trademarks.  The PEPPA PIG Trademarks are famous marks and valuable assets of eOne.  Peppa Pig Products typically include at least one of the registered PEPPA PIG Trademarks and/or the Peppa Pig Copyrighted Designs.

4

11.     Several of the PEPPA PIG Trademarks are registered with the United States

Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 3,663,706 | PEPPA PIG | Aug. 4, 2009 | For: Computer game software and programs; pre-recorded video cassettes, DVDs, multi-media software, CD-ROMS, compact discs, and audio cassettes, all featuring pre-school aged children's educational and entertainment matter, games, music, images, and animated cartoons; sunglasses; spectacle frames; audiocassette players in class 009; |
|  |  |  | For: Printed publications, namely, books, booklets, drawing and coloring books, comic books, magazines, activity books, song books, all in the field of pre-school aged children's education and entertainment; stationery, notebooks and writing pads, calendars, pens, pencils and crayons, pen and pencil cases; arts and craft finger paint kits; modeling compounds; re-usable and air-drying compounds for modeling; printed instructional and teaching material in the field of pre-school aged children's education and entertainment; printed paper napkins; printed paper tablecloths and printed paper mats; printed stickers and iron-on and plastic transfers; printed postcards and printed greetings cards in class 016. |
|  |  |  | For: Clothing and headgear, namely, shirts, ties, pants, sweaters, jackets, coats, shorts, t-shirts, sweatshirts, sweatpants, undershirts, underwear, |

socks, pajamas, belts, caps, hats, vests, scarves, gloves; footwear, namely, shoes, slippers, and athletic shoes in class 025.

For: Games, travel games, handheld games, tabletop games, travel size electronic games, activity games, and playthings, namely, board games, role playing games, trivia and question and answer games, chess games, card games, yo-yos, action skill games, dice games, target games, hand held unit for playing electronic games, hand held unit for playing video games, hand held games with liquid crystal displays; electronic and non-electronic puzzles and puzzle games, hand-held, tabletop, and travel-size jigsaw puzzles; balloons; playground balls for games; dolls and toys, namely, articulated and non-articulated dolls, toy figures, modeled plastic toy figurines, bendable toys and action figures; stuffed, plush, bean-bag and cloth toys; toy costume masks; puppets; corrugated playhouses; playing cards; roller-skates; toy scooters; scale model toy vehicles; wooden toy vehicles; diecast toy vehicles in class 028.

For: Education services, namely, providing courses of instruction at the pre-school level; entertainment in the nature of circuses and stage shows for pre-school aged children; television entertainment in the nature of a series of television shows in the field of pre-school aged children's entertainment; children's entertainment and amusement

| | | | |
|---|---|---|---|
| | | | centers, namely, amusement parks and play areas; production of motion picture films and radio and television programs for pre-school aged children; arranging and conducting athletic competitions for pre-school aged children; publication of text and graphic works of others on books, CD-ROMS and online featuring cartoon characters in class 041. |
| 4,872,348 | PEPPA PIG | Dec. 22, 2015 | For: Bleaching preparations and other substances, namely, laundry soap, laundry detergent for laundry use; general purpose cleaning, polishing, and abrasive liquids and powders; soaps; perfumery, essential oils, cosmetics, hair lotions; dentifrices; aftershave lotions; antiperspirants; baby oil; baby wipes; bath gels; bath powder; blush; body creams, lotions for skin, hair, face, and baby, face powders; breath fresheners; bubble bath; eau de Cologne; deodorants for personal use; cosmetic powders for the face, hands and body; essential oils for personal use; eye liner; eye shadows; eyebrow pencils; face powder; face creams; facial lotions; face masks for cosmetic purposes; facial scrubs; room fragrances incorporating wicks; fragrances for personal use; hair gels; hair conditioners; hair shampoo; hair mousse; hair cream; hair spray; hand cream; hand lotions; soaps for the hand; lip balm; lipsticks; lipstick holders; lip gloss; liquid soaps; make-up; mascara; non-medicated mouthwash; nail care preparations; nail enamel; nail hardeners; nail polish; perfumes; potpourri; scented room sprays; shaving creams; skin soap; talcum powder; eaux |

|  |  |  | de toilette; skin creams; skin moisturizers; sun block preparations; non-medicated sun care preparations in class 003.

For: Materials for dressings, namely, gauze; medical plasters; portable filled medicine cases, namely, first aid kits; baby food; vitamins for children; herb teas for medicinal purposes; disinfectants for hygiene purposes in class 005.

For: Tableware, namely, knives, forks and spoons; cutlery, namely, knives, forks and spoons in class 008.

For:    Vehicles, namely, strollers, push bikes; bicycles and parts therefor, namely, seats, brakes, chains, handle bars; scooters; perambulators; safety seats for children for vehicles; boats, in particular rubber dinghies; trailers; vehicular balloons, namely, air balloons; boats; side cars; saddle covers for bicycles or motorcycles; tricycles; mechanical anti-theft devices for vehicles; shopping carts; electric vehicles, namely, toy cars; rims for bicycle wheels, chains, bells, baskets, handlebars, wheel hubs, dress guards, pedals, pumps, frames, tires, saddles and/or bags for bicycles; direction indicators for vehicles, in particular for bicycles, namely, wind sleeves; repair outfits for inner tubes, namely, patches; luggage racks and/or bags for vehicles, namely, for two-wheeled vehicles; horns, in particular for automobiles; carts; motorcycles and mopeds; stroller |
|---|---|---|---|

| | | | covers; hub caps; tires, solid, for vehicle wheels; wheelchairs; rear view mirrors; sleighs for transport purposes; snowmobiles; fitted seat covers for vehicles; wheelbarrows; bicycle stands in class 012.<br><br>For: Precious metals and their alloys and goods of precious metals or coated therewith, namely, boxes, charms, key rings, figures, figurines, holiday ornaments, jewellery cases, key chains, ornamental pins, ornaments of precious metal in the nature of jewelry, picture frames; jewellery, precious stones; horological and chronometric instruments; alarm clocks; bracelets; busts of precious metal; pendants; clocks; earrings; jewel cases of precious metal; jewelry chains; key rings of precious metal; lapel pins; necklaces; necktie fasteners; non-monetary coins; ornamental pins; rings; stopwatches; tie clips; tie pins; wall clocks; watch straps; watch cases; watch chains; watches; wedding bands; jewelry boxes not of metal; key fobs not of metal in class 014.<br><br>For:    Animal skins, hides; trunks and travelling bags; leather shoulder belts, all-purpose carrying bags, purses, umbrellas, parasols, walking sticks; whips, harnesses and saddlery; rucksacks; luggage; luggage tags; overnight bags; change purses; satchels; tote bags; waist pouches; wallets in class 018.<br><br>For: Furniture, mirrors, picture frames; |
|---|---|---|---|

goods of wood, cork, reed, cane, wicker, horn, bone, ivory, whalebone, shell, amber, mother-of-pearl, meerschaum and substitutes for all these materials, namely, drawer pulls; air mattresses for use when camping; bassinets; beds; benches; bookcases; cabinets; chairs; coat racks; computer furniture; computer keyboard trays; cots; couches; decorative mobiles; desks; figurines and statuettes made of bone, plaster, plastic, wax, or wood; flagpoles; footstools; hand fans; hand-held mirrors; lawn furniture; love seats; magazine racks; mattresses; non-Christmas ornaments made of bone, plaster, plastic, wax or wood; ottomans; pedestals; pillows; plant stands made of wire and metal; decorative wall plaques made of plastic or wood; plastic name badges being decorative articles; plastic novelty license plates; plastic cake decorations; sleeping bags; tables; toy boxes; umbrella stands; venetian blinds; wind chimes being decorative articles in class 020.

For: Household or kitchen utensils and containers, not of precious metal or coated therewith, namely, pots, pans, pot lids, cups; beverage glassware, goods of porcelain and earthenware, included in this class, namely, pots, pans, lids, cups; mugs, cocktail shakers, butter dishes, lunch boxes, cafetieres, ceramics for household purposes, namely, vases, drinking vessels, bowls, plates and pots, small hand-operated household and kitchen utensils and containers, not of precious metal or coated therewith,

namely, skimmers, turners, strainers, graters, sieves, cookware, namely, pots and pans, corkscrews, glass kitchen jars, trays for domestic purposes, dinnerware and tableware, namely, tea services; cups and mugs, tea pots; combs and sponges for household purposes; brushes for washing up; brush-making materials; articles for cleaning purposes, namely, sponges, cloths; steel wool; unworked or semi-worked glass, except glass used in building; all the aforesaid goods included in this class; candle snuffers of precious metal; candlesticks not of precious metal in class 021.

For: Textiles and textile goods, namely, banners, flags, coasters, labels for identifying clothing, quilts, hang tags, wall hangings; bed and plastic table covers; afghans; bath linen; blanket throws; bed canopies; bed linen; bed sheets; bed skirts; bed spreads; blanket throws; calico; children's blankets; cloth coasters; cloth doilies; cloth flags; cloth pennants; duvets; curtains; fabrics that may or may not have printed patterns and designs thereon for use in textile applications, namely, the manufacture of flags; felt pennants; golf towels; towels; handkerchiefs; hooded towels; household linen; kitchen towels; pillowcases; quilts; baby blankets; silk blankets; table linen; textile napkins; textile place mats; table napkins of textile; throws and face cloths in class 024.

For: Carpets; rugs; car floor mats; bath mats; gymnastic mats; plastic floor

coverings; wall hangings, not of textile; wallpaper lined with textile in class 027.

For: Meat, fish, poultry and game; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies, jams, compotes; eggs; milk; milk products excluding ice cream, ice milk and frozen yogurt; edible oils and fats in class 029.

For: Coffee; tea; cocoa; sugar; rice; tapioca; sago; artificial coffee; flour and preparations made from cereals, namely, breakfast cereals, cereal bars, cereal based snack food, ready-to-eat cereals; bread; pastry; confectionery made of sugar; fruit ices; honey; treacle; yeast, baking-powder; salt; mustard; vinegar; sauces, condiments, namely, chutneys, food condiments consisting primarily of ketchup and salsa, savory sauces used as condiments; spices in class 030.

For: Beers; mineral, and aerated waters, and other non-alcoholic beverages, namely, lemonade; fruit beverages, and fruit juices; syrups for making beverages; and other preparations for making beverages, namely, fruit drinks, lemonade in class 032.

For: Product merchandising; sales promotion, for others, in particular marketing and promotion of goods and services of all kinds, including via online portals; online retail store services featuring audio, audiovisual, musical, multimedia and video content and associated merchandise in class 035.

| | | | | For: telecommunication services, namely, transmission of voice, data, graphics, images, audio and video by means of broadband optical or wireless networks; providing voice chat services and chat rooms on the internet; internet provider services, namely, the leasing and arranging of access time to data networks, in particular to the internet; hotline or call center telephone services; providing press services in connection with online services, namely, the gathering, supplying and transmission of messages and information of all kinds, being online press agency services, including on-demand services and other electronic media services; providing access to the internet; telecommunications, in particular computer-aided electronic information and communication services, included in this class, for public and private users, namely, computer-aided transmission of information and images; sound, image and data transmission by cable, satellite, computer, computer network, telephone, ISDN and DSL lines; radio and television broadcasting; news and general information agencies, being press agency services, including electronic agencies, and broadcasting of television and radio programs on the World Wide Web, and broadcasting of television and radio programs by cable, satellite and other media; internet provider services; providing access to computer databases, in particular on the internet and/or intranets; providing access to licensed content on the internet |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | by means of content syndication for customers; providing access to computer programs on data networks in class 038. |
| 3,506,452 |  | Sept. 23, 2008 | For: DVDs featuring pre-school aged children's educational and entertainment matter, games, music, images, and animated cartoons in class 009. |
| 4,783,931 |  | Aug. 4, 2015 | For: Bleaching preparations for laundry use; fabric softeners for laundry use; general purpose cleaning, polishing, degreasing and abrasive preparations; soaps; perfumery, essential oils, cosmetics, hair lotions; dentifrices; aftershave lotions; antiperspirants; essential oils for use in aromatherapy; baby oil; baby wipes; bath gels; bath powder; blush; body creams, lotions, and powders; breath fresheners; bubble bath; eau de cologne; personal deodorants; cosmetic powders for the face, hands and body; essential oils for personal use; eye liner; eye shadows; eyebrow pencils; face powder; face creams; facial lotions; facial masks for cosmetic purposes; facial scrubs; room fragrances incorporating wicks; fragrances for personal use; hair gels; hair conditioners; hair shampoo; hair mousse; hair cream; hair spray; hand cream; hand lotions; soaps for the hand; lip balm; lipsticks; lip gloss; liquid soaps; make-up; mascara; non-medicated mouthwash; nail care preparations; nail enamel; nail hardeners; nail polish; perfumes; potpourri; scented room sprays; shaving creams; skin soap; talcum powder; eaux de toilette; skin creams; skin |

moisturizers; sun blocking preparations; non-medicated sun care preparations; lipstick holders in class 003.

For: DVDs featuring pre-school aged children's educational and entertainment matter, games, music, images, and animated cartoons and programs; pre-recorded video cassettes featuring children's educational and entertainment matter; fire extinguishing apparatus; apparatus for recording, transmission or reproduction of sound or images; blank magnetic data carriers; audio recording discs featuring children's educational and entertainment matter, games, music; data-processors; computers; sound recordings featuring children's educational and entertainment matter, games, music; audio recordings featuring music; video recordings featuring children's educational and entertainment matter, games, music, images, and animated cartoons; downloadable ring tones, music, mp3 files featuring music, graphics and video files featuring children's educational and entertainment matter, games, music, images, and animated cartoons, all for wireless communications devices; computer game programs; video game software; computer game programs downloadable via the Internet; video game cartridges; video game programs recorded on floppy discs, CD-ROMs, cassettes, tapes and mini discs; compact disc players; compact discs featuring children's educational and entertainment matter, games, music, images, and animated cartoons; DVD players;

computer software for children's educational and entertainment matter, games, music, images, and animated cartoons; downloadable computer programs for children's educational and entertainment matter, games, music, images, and animated cartoons; exposed photographic film; cassette players; magic lanterns; sunglasses, spectacle frames; phonograph records featuring children's educational and entertainment matter, games, music; life jackets; recording and playing devices for sound and image carriers; portable stereos; pre-recorded videotapes featuring children's educational and entertainment matter; pre-recorded video cassettes featuring children's educational and entertainment matter; video recorders; mechanisms for coin-operated apparatus; cash registers; calculating machines in class 009.

For: Paper; cardboard; goods made from paper or cardboard, namely, books, booklets, drawing and coloring books, comic books, magazines, activity books and song books, all in the field of pre-school aged children's education and entertainment; stationery, notebooks and writing pads, calendars; photographic products, namely, photographic prints; printed matter, namely, printed paper napkins, printed paper tablecloths and printed paper mats, printed stickers and iron-on and plastic transfers printed postcards and printed greetings cards; pamphlets, books, newspapers, periodicals, magazines, brochures, catalogues and promotional pamphlets, all in the field of children's education

| | | | | and entertainment; book binding materials; sheet music; telephone calling cards and credit cards, without magnetic coding; chromolithographs; photographs; pictures; graphic representations; printed instructional and teaching material in the field of pre-school aged children's education and entertainment; posters; greeting cards; postcards; picture cards; transfers and stickers; photograph albums; collectors' albums in the nature of stamp albums; stationery products, namely, envelopes; adhesive tapes for household decoration and stationery purposes; artists' materials, namely, pens, pencils and crayons, pen and pencil cases; molds for modeling clays; drawing, painting and modelling goods, namely, modeling compounds; re-usable and air-drying compounds for modeling, arts and craft finger paint kits; drawing and painting implements, namely, square rulers; paintbrushes; adhesives and adhesive strips for stationery or household purposes; typewriters; office requisites, namely, rubber bands; printed instructional and teaching material in the field of literacy and math; diaries; calendars; bookmarks; kitchen towels of paper; paper towels; geographical maps; maps; beer mats, namely, coasters of paper or cardboard; address stamps; loose-leaf binders for office use; paper file jackets; paper napkins; sheets of reclaimed cellulose for wrapping; filter paper; paper and cardboard containers; paper and cardboard pouches for packaging; paper and cardboard bags for packaging; absorbent sheets of paper for |
|---|---|---|---|---|

foodstuff packaging; plastic bags, film, foil for packaging; printers' type; printing blocks; adhesive tapes for stationery or household purposes; letter openers of precious metal in class 016.

For: Animal skins; animal hides; trunks and travelling bags; leather shoulder belts; all-purpose carrying, duffel, book, sports, diaper, key, school and wheeled bags; cosmetic bags sold empty; handbags; purses; umbrellas; parasols; walking sticks; whips; harnesses and saddlery; rucksacks; luggage; luggage tags; overnight bags; change purses; satchels; canvas, leather, mesh and textile shopping bags; tote bags; waist pouches; wallets; leather and imitation leather in class 018.

For: Household or kitchen utensils, namely, pots, pans, lids for pots and pans, cups, pot and pan scrapers, rolling pins, spatulas, turners and whisks; household and kitchen containers; beverage glassware; goods of porcelain and earthenware, namely, pots, pans, lids for pots and pans, and cups; mugs; cocktail shakers; butter dishes; lunch boxes; non-electric cafetieres; ceramics for household purposes, namely, vases, vessels, bowls, plates and pots; small hand-operated household and kitchen utensils, namely, skimmers, turners, strainers, graters, sieves; household and kitchen containers; cookware, namely, pots and pans; non-electric cooking utensils, namely, wire baskets; corkscrews; kitchen glass jars; serving trays; dinnerware; cups; tea pots; combs;

sponges for household purposes; hair brushes; brushes for washing up; brush-making materials; articles for cleaning purposes; steel wool; unworked or semi-worked glass, except glass used in building; candle snuffers of precious metal; candlesticks not of precious metal; gloves for household purposes; oven cleaning cloths; barbecue mitts in class 021.

For: Textiles and textile goods, namely, coasters, labels for identifying clothing, quilts, hang tags, wall hangings; bed covers; table covers, namely, textile and plastic tablecloths; afghans; bath linen; bed, sofa and children's blankets; bed canopies; bed linen; bed sheets; bed skirts; bed spreads; blanket throws; calico; children's blankets; cloth coasters; cloth doilies; cloth flags; cloth pennants; duvets; curtains; fabric flags; felt pennants; golf towels; towels; handkerchiefs; hooded towels; household linen; kitchen towels; pillowcases; quilts; baby blankets; silk blankets; table linen; textile table napkins; textile place mats; table napkins of textile; throws; face cloths; banners and flags of textile in class 024.

For: Clothing, namely, shirts, ties, pants, sweaters, jackets, coats, shorts, t-shirts, sweatshirts, sweatpants, undershirts, underwear, socks, pajamas, belts, caps, hats, vests, scarves, gloves; footwear; headwear; leather belts; bolo ties with precious metal tips in class 025.

| | | | | For: Games, playthings and toys, namely, travel board games, handheld non-electronic skill games, tabletop games, travel size electronic games for the teaching of children, children's multiple activity toys, role playing games, trivia and question and answer games played with cards and game components, chess games, card games, yo-yos, action skill games, dice games, target games, hand held unit for playing electronic games, hand held unit for playing video games, hand held games with liquid crystal displays; electronic and non-electronic puzzles and puzzle games; hand-held, tabletop, and travel-size jigsaw puzzles; playground balls for games; dolls and toys, namely, articulated and non-articulated dolls, toy figures, modeled plastic toy figurines, bendable toys and action figures; stuffed and plush toys; toy bean bags; and cloth toys, namely, dolls; toy costume masks; puppets; corrugated playhouses; roller-skates; toy scooters; scale model toy vehicles; wooden toy vehicles; diecast toy vehicles; playing cards and card games; gymnastic and sporting articles, namely, horizontal bars; decorations for Christmas trees, except illumination articles and confectionery; action skill games; action figures and accessories therefor; board games; card games; children's multiple activity toys; badminton sets; balloons; basketballs; bath toys; baseballs; beach balls; bean bag dolls; toy building blocks; bowling balls; chess sets; Christmas stockings; collectable toy figures; crib mobiles; crib toys; tossing disc toys; dolls; doll |
|---|---|---|---|---|

| | | | clothing; accessories for dolls; doll playsets; electric action toys; equipment sold as a unit for playing card games; fishing tackle; golf balls; golf gloves; golf ball markers; hand held unit for playing electronic games; hockey pucks; inflatable toys; puzzles; jump ropes; kites; magic tricks; marbles; manipulative games; mechanical toys; music box toys; musical toys; parlor games; party games; soft sculpture toys; puppets; roller skates; rubber action balls; skateboards; soccer balls; spinning tops; squeeze toys; stuffed toys; table tennis tables; target games; teddy bears; tennis balls; toy action figures; toy bucket and shovel sets; toy mobiles; toy vehicles; toy scooters; toy cars; toy model hobbycraft kits; toy figures; toy banks; toy trucks; toy watches; wind up toys; yo-yos; water-wings; swimming belts; video game machines for use with external display screens or monitors only; amusement apparatus adapted for use with television receivers only; children's play cosmetics in class 028.<br><br>For: Meat, fish, poultry and game, not live; meat extracts; preserved, frozen, dried and cooked fruits and vegetables; jellies; jams; compotes; eggs; milk; milk products excluding ice cream, ice milk and frozen yogurt; edible oils and fats in class 029.<br><br>For: Coffee; tea; cocoa; sugar; rice; tapioca; sago; artificial coffee; flour; preparations made from cereals, namely, bread; pastry; confectionery, namely, candy; edible, flavored ices; honey; |
|---|---|---|---|

|  |  |  | treacle; yeast; baking powder; salt; mustard; vinegar; sauces being condiments; spices in class 030.

For:     Beers; mineral, and aerated waters; non-alcoholic beverages, namely, lemonade; fruit beverages; fruit juices; syrups and powders for making beverages in class 032.

For: Education services, namely, providing courses of instruction at the pre-school level; training services in the field of instruction at the pre-school level; entertainment in the nature of circuses and stage shows for pre-school aged children; television entertainment in the nature of a series of television shows in the field of pre-school aged children's entertainment; children's entertainment and amusement centers, namely, amusement parks and play areas; organizing community sporting and cultural events; editing and production of film and television, radio and multimedia programs; entertainment services, namely, providing an ongoing radio program for pre-school aged children; organizing live exhibitions and conferences in the fields of culture, sports and entertainment for non-business and non-commercial purposes; entertainment services in the nature of live musical performances; arranging of concerts; photography services; providing recreation facilities in class 041. |
|---|---|---|---|

12.     The above U.S. registrations for the PEPPA PIG Trademarks are valid, subsisting, and in full force and effect, and Registration Nos. 3,663,706 and 3,506,452 are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the PEPPA PIG Trademarks constitute *prima facie* evidence of their validity and of eOne's exclusive right to use the PEPPA PIG Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the United States Registration Certificates for the above-listed PEPPA PIG Trademarks are attached hereto as **Exhibit 1**.

13.     The PEPPA PIG Trademarks are distinctive when applied to the Peppa Pig Products, signifying to the purchaser that the products come from eOne and are manufactured to eOne's quality standards.  Whether eOne manufactures the products itself or contracts with others to do so, eOne has ensured that products bearing the PEPPA PIG Trademarks are manufactured to the highest quality standards.

14.     The PEPPA PIG Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Peppa Pig Products have enabled the Peppa Pig brand to achieve widespread recognition and fame and have made the PEPPA PIG Trademarks some of the most well-known marks in the toy and children's entertainment industries.  The widespread fame, outstanding reputation, and significant goodwill associated with the Peppa Pig brand have made the PEPPA PIG Trademarks valuable assets of eOne.

15.     Since the initial launch of the Peppa Pig Products, the PEPPA PIG Trademarks have been the subject of substantial and continuous marketing and promotion by eOne.  eOne has and continues to market and promote the PEPPA PIG Trademarks in the industry and to consumers through traditional print media, the official PEPPA PIG website (peppapig.com), social media sites, and point of sale material.

16.     eOne has expended substantial time, money, and other resources in advertising and promoting the PEPPA PIG Trademarks.  In fact, eOne has expended millions of dollars in advertising, promoting and marketing featuring the PEPPA PIG Trademarks.  Peppa Pig Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the PEPPA PIG Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from eOne.  Peppa Pig Products have become among the most popular of their kind in the U.S. and the world.  The PEPPA PIG Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  *Id.*  As such, the goodwill associated with the PEPPA PIG Trademarks is of incalculable and inestimable value to eOne.

17.     Genuine Peppa Pig Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Peppa Pig brand.

18.     eOne has registered its Peppa Pig Copyrighted Designs with the United States Copyright Office.  The registrations include, but are not limited to: "Peppa Pig" (U.S. Copyright Registration No. VA 1-329-059), issued by the Register of Copyrights on August 19, 2005; "George Pig" (U.S. Copyright Registration No. VA 1-329-056), issued by the Register of Copyrights on August 19, 2005; "Mummy Pig" (U.S. Copyright Registration No. VA 1-329-058), issued by the Register of Copyrights on August 19, 2005; and "Daddy Pig" (U.S. Copyright Registration No. 1-329-057), issued by the Register of Copyrights on August 19, 2005.  A true and correct copy of the U.S. federal copyright registration certificates for the above-referenced Peppa Pig Copyrighted Designs is attached hereto as **Exhibit 2**.

24

19.     Among the exclusive rights granted to eOne under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Peppa Pig Copyrighted Designs to the public.

**The Defendants**

20.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Unauthorized Peppa Pig Products to consumers within the United States, including the State of Illinois.

21.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the PEPPA PIG Trademarks and/or unauthorized copies of the Peppa Pig Copyrighted Designs in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for eOne to learn Defendants' true identities and the exact interworking of their network.  In the event that Defendants provide additional credible information regarding their identities, eOne will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of the Peppa Pig brand has resulted in its significant counterfeiting. Consequently, eOne has a worldwide brand protection program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, eOne has identified hundreds of marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Unauthorized Peppa Pig Products to consumers in this Judicial District and throughout the United States.  Despite eOne's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

23.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and PayPal.  The Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have

26

come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. eOne has not licensed or authorized Defendants to use any of the PEPPA PIG Trademarks or copy or distribute the Peppa Pig Copyrighted Designs, and none of the Defendants are authorized retailers of genuine Peppa Pig Products.

24. Many Defendants also deceive unknowing consumers by using the PEPPA PIG Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract consumers searching for genuine Peppa Pig Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Peppa Pig Products. Other Defendants only show the PEPPA PIG Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine Peppa Pig Products.

25. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, Unauthorized Peppa Pig Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of

being unauthorized, suggesting that the Unauthorized Peppa Pig Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of the same text and images, including content copied from eOne's official peppapig.com website.

27. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

28. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of eOne's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

29. Defendants, without any authorization or license from eOne, have knowingly and willfully used and continue to use the PEPPA PIG Trademarks and/or copies of the Peppa Pig

Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Peppa Pig Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Unauthorized Peppa Pig Products into the United States, including Illinois.

30.     Defendants' unauthorized use of the PEPPA PIG Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Peppa Pig Products, including the sale of Unauthorized Peppa Pig Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming eOne.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31.     eOne hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PEPPA PIG Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The PEPPA PIG Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Peppa Pig Products offered, sold or marketed under the PEPPA PIG Trademarks.

33.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PEPPA PIG Trademarks without eOne's permission.

34.     eOne's United States Registrations for the PEPPA PIG Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of eOne's rights in the PEPPA PIG Trademarks, and are willfully infringing and intentionally using counterfeit versions of the PEPPA PIG Trademarks.  Defendants' willful, intentional and unauthorized use of the PEPPA PIG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Peppa Pig Products among the general public.

35.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     eOne has no adequate remedy at law, and if Defendants' actions are not enjoined, eOne will continue to suffer irreparable harm to its reputation and the goodwill of the PEPPA PIG Trademarks.

37.     The injuries and damages sustained by eOne have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Peppa Pig Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38.     eOne hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Peppa Pig Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with eOne or the origin, sponsorship, or approval of Defendants' Unauthorized Peppa Pig Products by eOne.

40.     By using the PEPPA PIG Trademarks on the Unauthorized Peppa Pig Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Peppa Pig Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Peppa Pig Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     eOne has no adequate remedy at law and, if Defendants' actions are not enjoined, eOne will continue to suffer irreparable harm to its reputation and the associated goodwill of the Peppa Pig brand.

### COUNT III
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

43.     eOne hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Unauthorized Peppa Pig Products as those of eOne, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Peppa Pig Products, representing that their Unauthorized Peppa Pig Products have eOne's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

45.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

46.     eOne has no adequate remedy at law, and Defendants' conduct has caused eOne to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, eOne will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT IV**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

47.     eOne hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 46.

48.     eOne is the owner of valid and enforceable Peppa Pig Copyrighted Designs, which contain certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

49.     eOne has complied with the registration requirements of 17 U.S.C. § 411(a) for the Peppa Pig Copyrighted Designs and has obtained Copyright Registration Nos. VA 1-329-059, VA 1-329-058, VA 1-329-057, and VA 1-329-056.

50.     Defendants do not have any ownership interest in the Peppa Pig Copyrighted Designs.  Defendants had access to the Peppa Pig Copyrighted Designs via the internet.

51.     Without authorization from eOne, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Peppa Pig Copyrighted Designs on the Defendant Internet Stores and the corresponding Unauthorized Peppa Pig Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Peppa Pig Copyrighted Designs.   Such conduct infringes and continues to infringe the Peppa Pig Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52.     Defendants reap the benefits of the unauthorized copying and distribution of the Peppa Pig Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized Peppa Pig Products.

53.     The Defendants have unlawfully appropriated eOne's protectable expression by taking material of substance and value and creating Unauthorized Peppa Pig Products that capture the total concept and feel of the Peppa Pig Copyrighted Designs.

54.     Upon information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to eOne's rights.

55.     The Defendants, by their actions, have damaged eOne in an amount to be determined at trial.

56.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, eOne great and irreparable injury that cannot fully be compensated or measured in money.  eOne has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, eOne is entitled to a preliminary and permanent injunction prohibiting further infringement of the Peppa Pig Copyrighted Designs.

## PRAYER FOR RELIEF

WHEREFORE, eOne prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the PEPPA PIG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine

33

Peppa Pig Product or is not authorized by eOne to be sold in connection with the PEPPA PIG Trademarks;

b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Peppa Pig Copyrighted Designs in any manner without the express authorization of eOne;

c.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Peppa Pig Product or any other product produced by eOne, that is not eOne's or not produced under the authorization, control, or supervision of eOne and approved by eOne for sale under the PEPPA PIG Trademarks and/or the Peppa Pig Copyrighted Designs;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Peppa Pig Products are those sold under the authorization, control or supervision of eOne, or are sponsored by, approved by, or otherwise connected with eOne;

e.  further infringing the PEPPA PIG Trademarks and/or the Peppa Pig Copyrighted Designs and damaging eOne's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for eOne, nor authorized by eOne to be sold or offered for sale, and which bear any of eOne's trademarks, including the PEPPA PIG Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Peppa Pig Copyrighted Designs;

2) Entry of an Order that, upon eOne's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the PEPPA PIG Trademarks and/or which bear the Peppa Pig Copyrighted Designs;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PEPPA PIG Trademarks and/or which bear the Peppa Pig Copyrighted Designs; and

   c. take all steps necessary to prevent links to the Online Marketplace Accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Online Marketplace Accounts from any search index;

3) That Defendants account for and pay to eOne all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PEPPA PIG Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that eOne be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PEPPA PIG Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Peppa Pig Copyrighted Designs, eOne is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at eOne's election prior to any final judgment being entered, eOne is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) eOne is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 27th day of June 2018.        Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Entertainment One UK Ltd.*