**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., | Case No. 18-cv-04461 |
| Plaintiff, | **Judge Harry D. Leinenweber** |
| v. | **Magistrate Judge Mary M. Rowland** |
| 2012SHILIANG, et al., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT, A STATUTORY DAMAGES AWARD, AND RESPONSE TO
<u>DEFENDANTS' MOTIONS TO TERMINATE PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

I.   BACKGROUND ......................................................................................... 1

    A.   eOne and the Peppa Pig Trademarks ..................................................... 1

    B.   Genuine Peppa Pig Products................................................................... 2

    C.   Defendants' Unlawful Activities ............................................................ 3

    D.   Defendants' Conduct During Discovery................................................. 5

    E.   Procedural History .................................................................................. 5

II.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ............ 5

    A.   Summary Judgment Standard ................................................................. 5

    B.   eOne is Entitled to Summary Judgment Against Defendants on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims ................................................................................................... 6

        i.    The PEPPA PIG Trademark is Federally Registered. ................................ 7

        ii.   Defendants Advertised, Offered to Sell, and Sold Counterfeit Peppa Pig Products in Commerce without eOne's Authorization. ............................ 7

        iii.  Defendants' Use of the Counterfeit PEPPA PIG Trademark Caused a Likelihood of Confusion and Infringed as a Matter of Law ..................... 7

III. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANTS FOR TRADEMARK COUNTERFEITING.......................................... 10

    A.   Statutory Damages Are Appropriate in this Case ................................. 10

    B.   A Significant Damages Award Is Warranted........................................ 12

        i.    The Value of the PEPPA PIG Trademark and eOne's Anti-Counterfeiting Efforts Justify a High Statutory Damages Award.................................... 12

        ii.   Defendants' Counterfeiting of the PEPPA PIG Trademark Was Willful. 13

        iii.  Defendants' Wide Exposure over the Internet Merits a Substantial Statutory Damages Award. ....................................................................... 13

        iv.   The Requested Statutory Damages Award Must Sufficiently Deter Defendants and Similar Online Counterfeit Sellers................................. 14

IV.    PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF AND
DEFENDANTS' MOTIONS TO TERMINATE PRELIMINARY INJUNCTION
SHOULD BE DENIED ................................................................................................. 15

V.    eONE IS ENTITLED TO ATTORNEY'S FEES AND COSTS...................................... 19

VI.    CONCLUSION............................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................... 6

*AutoZone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008) ............................................... 9

*Barbecue Marx, Inc. v. Ogden, Inc.*,
    235 F.3d 1041 (7th Cir. 2000) ............................................. 7

*Bulgari, S.P.A. v. Zou Xiaohong, et al.*,
    2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) ........................................... 13, 14

*Chi-Boy Music v. Charlie Club*,
    930 F.2d 1224 (7th Cir. 1991) ............................................. 11

*Chloe SAS v. Sawabeh Info. Servs. Co*,
    2014 U.S. LEXIS 124433 (C.D. Cal. Sept. 5, 2014) ....................................... 8

*Door Sys. v. Pro-Line Door Sys.*,
    83 F.3d 169 (7th Cir. 1996) ............................................... 8

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
    35 F.3d 1134 (7th Cir. 1994) ............................................. 16

*Gianni Versace, S.p.A. v. Zou Yulan, et al.*,
    No. 17-cv-07869 (N.D. Ill. Nov. 1, 2017) (Docket No. 52) ............................. 18

*Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
    735 F.3d 735, 740 (7th Cir. 2013) ................................................. 16

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
    No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ...................... 11

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986,
    2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ............................. 12, 13

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*,
    2016 U.S. Dist. LEXIS 144660 (N.D. Ill. Oct. 19, 2016) ................................ 18

*Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
    2015 U.S. Dist. LEXIS 78961, at *11 (N.D. Ill. June 18, 2015) ...................... 18

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) ................................................................. 8

*Monster Energy Co. v. Chen Wensheng*,
    136 F. Supp. 3d 897 (N.D. Ill. 2015) ........................................................... 18

*Monster Energy Company v. Meng Chun Jing, et al.*,
    2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015)................................ 9, 13

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2
    011 WL 1811446, at *5 (N.D. Ill. May 12, 2011)....................................... 6

*Packman v. Chi. Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ...................................................................... 6

*Phillip Morris USA Inc. v. Marlboro Express*,
    No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) .................... 14

*Promatek Industries, Ltd. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) ...................................................................... 16

*River Light V, L.P., et al. v. Zhangyali, et al.*,
    No. 15-cv-05918 (N.D. Ill. Sept. 9, 2015) .................................................. 18

*Sands, Taylor & Wood v. Quaker Oats Co.*,
    34 F.3d 1340 (7th Cir. 1994) ...................................................................... 11

*Sara Lee v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999)........................................................... 11

*Tiffany & Co. v. Costco Wholesale Corp.*,
    2015 U.S. Dist. LEXIS 119319 (S.D.N.Y. Sep. 8, 2015).............................. 8

*Tobinick v. Scripps Clinic Med. Group*,
    81 Fed. Appx. 677 (9th Cir. 2003)............................................................... 10

*Tony Jones Apparel, Inc. v. Indigo USA, LLC*,
    2005 U.S. Dist. LEXIS 14649 (N.D. Ill. July 11, 2005)............................... 19

**Statutes**

15 U.S.C. § 1057(b) ................................................................................................ 7

15 U.S.C. § 1114(1) ................................................................................................ 6

15 U.S.C. § 1116(a) .............................................................................................. 15

15 U.S.C. § 1117(b) ........................................................................................ 19, 20

15 U.S.C. § 1117(c) .................................................................................... 10, 11, 17

15 U.S.C. § 1117(c)(1) .......................................................................................... 10

15 U.S.C. § 1117(c)(2) ..................................................................................... 10, 14

15 U.S.C. § 1125(a)(1) ........................................................................................... 6

15 U.S.C. § 1127 .................................................................................................... 7

15 U.S.C. §1125(c)(1) ........................................................................................... 12

17 U.S.C. § 504(c) ................................................................................................ 11

815 Ill. Comp. Stat. 510/2(a) ................................................................................. 6

Fed. R. Civ. P. 56(a) .............................................................................................. 5

<u>**MEMORANDUM**</u>

Plaintiff Entertainment One UK Ltd. ("eOne" or "Plaintiff") submits this Memorandum in Support of its Motion for Summary Judgment on all claims against Defendants 6guys9 and luckyjerryxiang ("Defendants"),[1] a Statutory Damages Award against Defendants and Response to Defendants' Motions to Terminate Preliminary Injunction.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, eOne moves for entry of summary judgment against Defendants for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count III). Further, Plaintiff requests a statutory damages award of at least $100,000 from each of the Defendants and mandatory attorney fees and costs[2]. *See Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) (entering summary judgment for trademark counterfeiting and awarding $150,000 in statutory damages, finding that even though there was no evidence submitted that defendant was a "large-scale counterfeiter," defendant's online sale of counterfeit goods made plaintiff's actual losses difficult to calculate and justified a substantial award). Finally, Defendants' Motions to Terminate Preliminary Injunction, including the $399.55 currently restrained, should be denied.

I.   **BACKGROUND**

A.   **eOne and the Peppa Pig Trademarks**

eOne is a limited company organized and existing under the laws of the United Kingdom. [PSF 1]. eOne develops, acquires, produces, finances, distributes and sells entertainment content,

---

[1] This case has been resolved with all other defendants and remains pending against only Defendants 6guys9 and luckyjerryxiang.

[2] Plaintiff reserves the right to seek other relief sought in its Amended Complaint [10], including actual damages and an accounting of Defendants' profits, pending the outcome of this Motion.

throughout the United States, including in Illinois. [PSF 2, 13]. eOne holds U.S. federal trademark registrations for its trademarks, including U.S. Registration No. 4,872,348 for the word mark PEPPA PIG covering, among other goods, kitchen utensils (the "PEPPA PIG Trademark"). [PSF 14]. eOne's U.S. Registration No. 4,872,348 is valid, subsisting, and in full force and effect. [PSF 16]. The PEPPA PIG Trademark has been used exclusively and continuously by eOne and has never been abandoned. [PSF 17]. Among consumers and the public, Peppa Pig Products are widely recognized and exclusively associated with high-quality products sourced from eOne and are instantly recognizable as such. [PSF 18]. eOne has continuously and actively enforced its trademark rights, including filing multiple trademark infringement and counterfeiting lawsuits. [PSF 21]. eOne has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings. [PSF 21].

## B.     Genuine Peppa Pig Products

Peppa Pig originally aired in May 2004 and re-premiered in February 2015. [PSF 11]. Since 2015, four seasons have been aired, with a fifth airing. [PSF 11]. With over 1,000 licensees around the world, Peppa Pig is a top performing global preschool property that has been translated into over 40 languages and broadcast in over 180 territories. [PSF 11]. Peppa Pig Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers such as Target, Kmart, and Wal-Mart, both online and through brick-and-mortar locations. [PSF 13].

eOne has expended millions of dollars in advertising, promoting and marketing featuring the PEPPA PIG Trademark. [PSF 20]. Peppa Pig has won three British Academy of Film and Television Arts or BAFTA Awards for pre-school animation. [PSF 11]. In addition to episode DVDs, a variety of licensed Peppa Pig Products are available, including video games and other

2

toys such as playsets, playing cards, vehicles, and stuffed toys, household items such as kitchen utensils, bathroom products, and bed linens, food, drinks, clothing, and jewelry. [PSF 12].

### C. Defendants' Unlawful Activities

Defendants operate eBay stores 6guys9 and luckyjerryxiang[3] at the URLs ebay.com/usr/6guys9 and ebay.com/usr/luckyjerryxiang (collectively, "Defendants' Internet Stores"). [PSF 4, 5]. Defendants used plain text counterfeit versions of eOne's federally registered PEPPA PIG Trademark to advertise, offer for sale and sell products not authorized, licensed or manufactured by eOne. [PSF 23, 28]. Additionally, Defendants advertised, offered for sale, and sold cookie cutters for $7.50 and $5.00 that are shaped like the head of a Peppa Pig character and

eOne's Peppa Pig Trademark U.S. 4,781,931  . [PSF 15, 22, 26, 27, 31]. The 6guys9 Product and luckyjerryxiang Product are collectively referred to herein as the "Counterfeit Peppa Pig Products." Defendants identified the cookie cutters in the product title section as "**Peppa Pig** HeadCookie [*sic*] Cutter" and "**Peppa Pig** Head Cookie Cutter" in the product titles. [PSF 22, 27]. Defendants accepted payment for the Counterfeit Peppa Pig Products via PayPal. [PSF 25, 30]. Defendants shipped the Counterfeit Peppa Pig Products to Illinois. [PSF 26, 31]. eOne examined images of the received 6guys9 Product and luckyjerryxiang Product and confirmed they were counterfeit. [PSF 32-38]. Defendants are not authorized retailers of genuine Peppa Pig products, and have no license or authorization from eOne for use of the PEPPA PIG Trademark. [PSF 36]. Screenshots of Defendants' Internet Stores are below.

---

[3] Even though Defendants sold the same product and have filed nearly identical pleadings to date, responses to their discovery responses indicate that each store is operated by a separate person. [PSF 4, 5]. Specifically, the operator of 6guys9 is HaiJie Lin and the operator of luckyjerryxiang is Jian Feng. *Id*.



*Figure 1 - 6guys9 Product Listing*



*Figure 2 - luckyjerryxiang Product Listing*

Information provided by PayPal indicates that Defendants' PayPal Accounts have a total restrained balance of approximately $399.55 USD, but have received over $100,000 USD. [PSF 54].

### D.    Defendants' Conduct During Discovery

Defendants have failed to search for and produce relevant records and documents responsive to written discovery requests made by eOne.  For example, Defendants have not produced complete sales records related to their Internet Stores, disclosed other websites they operate and/or whether counterfeit Peppa Pig products were sold on those websites.  [PSF 47-53].  The financial documents produced by Defendants consisted of cropped screenshots, and Defendants have not identified other financial accounts they own.  [PSF 47-48, 50, 51].  Defendants have also failed to produce any documents relating to Defendants' procedures for determining whether products offered for sale by Defendants were authorized.  [PSF 53].

### E.    Procedural History

eOne filed this action on June 27, 2018 against Defendants.  [1].  This Court granted a Temporary Restraining Order ("TRO") [24] against Defendants on July 10, 2018, finding that eOne demonstrated, among other things, a likelihood of success on its claims.  This TRO was extended [31] and subsequently converted to a Preliminary Injunction [39] on August 7, 2018.  [39].  Defendants filed their respective Answers[4] to eOne's Complaint on October 9, 2018.  [69, 72].  Defendants moved to Terminate the Preliminary Injunction on November 20, 2018.  [78, 79].

## II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A.    Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

---

[4] On October 23, 2018, the Court entered Default Judgment against defaulting defendants and awarded $1,000,000 in statutory damages.  [75].

5

prevail as a matter of law." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.    eOne is Entitled to Summary Judgment Against Defendants on Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a). eOne's Section 43(a) of the Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011).

To succeed on a federal trademark infringement claim, eOne must establish that it has a protectable trademark and that Defendants' misuse of the trademark creates a likelihood of confusion among consumers. *Barbecue Marx, Inc. v. Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir.

6

2000). eOne satisfies all requirements to successfully bring a trademark infringement and counterfeiting claim.

          i.      <u>The PEPPA PIG Trademark is Federally Registered.</u>

Regarding the first element, eOne holds a U.S. federal trademark registration for the PEPPA PIG Trademark, in addition to a U.S. federal trademark registration for the 4,783,931 mark. [PSF 14, 15]. eOne's U.S. Registration Nos. 4,872,348 and 4,783,931 are valid, subsisting, and in full force and effect. [PSF 16]. The registration for these trademarks constitutes *prima facie* evidence of their validity and of eOne's exclusive right to use these trademarks pursuant to 15 U.S.C. § 1057(b). As such, there can be no genuine issue of material fact as to whether eOne has valid and exclusive rights in the PEPPA PIG Trademark.

          ii.     <u>Defendants Advertised, Offered to Sell, and Sold Counterfeit Peppa Pig Products in Commerce without eOne's Authorization.</u>

Defendants advertised, offered for sale, and sold products using the PEPPA PIG Trademark on Defendants' Internet Stores. [PSF 22-31]. Defendants are not authorized retailers of genuine eOne products, and the products advertised, offered for sale, and sold using the PEPPA PIG Trademark on Defendants' Internet Stores are not genuine eOne products. [PSF 36-38].

          iii.    <u>Defendants' Use of the Counterfeit PEPPA PIG Trademark Caused a Likelihood of Confusion and Infringed as a Matter of Law</u>

Defendants used unauthorized marks which are identical with, or substantially indistinguishable from, the registered PEPPA PIG Trademark (Reg. No. 4,872,348)[5], and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit"). *See* Figures 1, 2, *supra*; [PSF 23, 28].

---

[5] The shape of the cookie cutter also constitutes trademark infringement of eOne's  mark (U.S. Reg. No. 4,781,931) under the same likelihood of confusion analysis.

Defendants used the PEPPA PIG Trademark in connection with the advertising, offering for sale, and sale of unauthorized goods. 15 U.S.C. § 1114(1)(a) (prohibiting the use in advertising of any goods or services on or in connection with a protected mark). *See also Tiffany & Co. v. Costco Wholesale Corp.*, 2015 U.S. Dist. LEXIS 119319, at *33 (S.D.N.Y. Sep. 8, 2015) (Confirming that there is no statutory requirement that the counterfeit mark be placed on the product itself, and finding defendant liable for counterfeiting for using the word "Tiffany" displayed on signs next to rings stamped with generic marks); *Chloe SAS v. Sawabeh Info. Servs. Co*, 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sept. 5, 2014) (finding that using a trademark in the product title constitutes trademark counterfeiting and confirming that "a protected mark need not appears 'on' the good offered for sale; it must only be used 'in connection with' the sale").

"[I]f the evidence is so one-sided that there can be no doubt about how the question should be answered," whether likelihood of confusion exists may be resolved on summary judgment. *Id*. (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)). The Seventh Circuit has held that where, as here, "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007); *see also NBA Props., Inc., et al. v. Yan Zhou, et al.*, 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14, 2017) (internal citation omitted). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the PEPPA PIG Trademark.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the

strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Defendants' Counterfeit Peppa Pig Products were advertised using a mark identical to the PEPPA PIG Trademark. [PSF 14, 23, 28]. Both Plaintiff and Defendants advertise products using the PEPPA PIG Trademark to the same consumers, targeting those consumers searching for genuine Peppa Pig Products. [PSF 19, 20, 21-31]. Thus, consumers searching for genuine Peppa Pig Products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Peppa Pig Products from Defendants' Counterfeit Products. This is particularly true since Defendants' Counterfeit Products were advertised, offered for sale, and sold on the Internet [PSF 22, 27], and consumers could not inspect the physical products. Further, Defendants were selling their products for $7.55 and $5.00. [PSF 22, 27]. Courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.'" *Monster Energy Co. v. Meng Chun Jing*, 2015 U.S. Dist. LEXIS 86956, at *7-8.

eOne does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" its goods as genuine eOne Products by using the PEPPA PIG Trademark. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). In addition to point-of-sale confusion about the source of products sold on the Defendant eBay Stores, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *Id.* at 683. Post-sale confusion refers to a situation in which, for example, a potential

customer sees a product bearing the infringing label used by others and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id*. That association also constitutes infringement of the PEPPA PIG Trademark. *Id.* Here, because of the Defendants' unlawful use of the well-known PEPPA PIG Trademark, that association is likely to result.

Accordingly, Defendants are liable for trademark counterfeiting as a matter of law.

## III.   PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANTS FOR TRADEMARK COUNTERFEITING

eOne seeks to recover an award of statutory damages of $100,000 per Defendant as authorized by 15 U.S.C. § 1117(c) for Defendants' advertising, offering for sale, and sale of Counterfeit Peppa Pig Products.

### A.   Statutory Damages Are Appropriate in this Case

15 U.S.C. § 1117(c) provides that a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17

U.S.C. § 504(c).  *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991).  Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion."  *Id*.  In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent."  *Id*.  Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award.  *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest.  *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347-48 (7th Cir. 1994).  Because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities."  *Sara Lee*, 36 F. Supp. 2d at 165.  Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor.  *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,  2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005).  Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners."  *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17.   Given the

11

broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563, at *18 (N.D. Ill. Nov. 5, 2004).

**B.     A Significant Damages Award Is Warranted**

       *i.*    *The Value of the PEPPA PIG Trademark and eOne's Anti-Counterfeiting Efforts Justify a High Statutory Damages Award*

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Peppa Pig] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Peppa Pig Products have been extensively promoted and advertised at great expense.  [PSF 20]. eOne's Peppa Pig brand has become a global success that resonates with children worldwide, and Peppa Pig Products are among the most recognizable in the world.  [PSF 13].  Among the purchasing public, Peppa Pig Products are instantly recognizable as such.  [PSF 18].  Because of these and other factors, the PEPPA PIG Trademark are famous marks as that term is used in 15 U.S.C. §1125(c)(1).

As part of its worldwide anti-counterfeiting program, eOne has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 21].  In recent years, eOne has enforced against hundreds of marketplace listings on platforms such as eBay, AliExpress, Alibaba, Amazon, and Wish.com.  [PSF 21]. Thus, eOne's request for a high statutory damages award should be given favorable consideration in view of the value of the Peppa Pig brand and the extensive steps being taken to protect, promote and enhance it.  *See*

*Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

ii.    <u>*Defendants' Counterfeiting of the PEPPA PIG Trademark Was Willful*</u>

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19-20.  Knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at *20.

The Court can infer from Defendants' conduct that they had knowledge that their conduct constituted infringement.  First, Defendants' use of the PEPPA PIG Trademark had to be willful, since products bearing the PEPPA PIG Trademark are widely recognized and associated exclusively with eOne, and the marks Defendants used are identical to the PEPPA PIG Trademark. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *10; *Bulgari, S.p.A.*, 2015 U.S. Dist. LEXIS 140606, at *6.  In addition, Defendants provided no evidence that they implement any policies or procedures to detect and prevent the sale of counterfeit goods. [PSF 53].  As such, Defendants' counterfeiting of the PEPPA PIG Trademark had to be willful, or at a minimum, shows a reckless disregard for eOne's trademark rights.

iii.    *Defendants' Wide Exposure over the Internet Merits a Substantial Statutory Damages Award.*

Defendants' ability to reach a vast customer base by willfully advertising, offering for sale, and selling Counterfeit Peppa Pig Products over the Internet on the eBay marketplace platform merits a substantial statutory damages award.  Defendants can reach a large base of active buyers through the eBay platform.  As of December 31, 2017, the eBay marketplace had more than 170 million active buyers. [PSF 39].  Courts in this District have recognized the ability for online marketplace sellers to reach a vast customer base and factored this wide market exposure into the

statutory damages calculation.  *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

> iv.    *The Requested Statutory Damages Award Must Sufficiently Deter Defendants and Similar Online Counterfeit Sellers*

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct.  *Sands, Taylor & Wood,* 34 F.3d at 1348.  In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)."  2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005).  *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites, like the eBay platform used by the Defendants.   [PSF 22, 27, 39].   In the 2017 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $1.2 billion.  [PSF 40].  China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 78 percent of all seizures.  [PSF 41].  In addition, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and

pirated products account for an estimated $850 billion in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue, of more than $125 billion every year.  [PSF 42].  BASCAP additionally expects these figures to increase each year.  [PSF 43].

Considering the above factors, including the strength of the PEPPA PIG Trademark, eOne's substantial anticounterfeiting efforts, Defendants' willful infringement, that Defendants' have the ability to reach a vast audience through their Internet stores and the need for deterrence of both Defendants and other sellers, eOne respectfully requests the Court's entry of an award of $100,000 per Defendant.

## IV.  PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF AND DEFENDANTS' MOTIONS TO TERMINATE PRELIMINARY INJUNCTION SHOULD BE DENIED

In addition to the foregoing relief, eOne respectfully requests the entry of a permanent injunction enjoining Defendants from advertising, offering for sale, and/or selling Counterfeit Peppa Pig Products or otherwise violating its rights in the Peppa Pig trademarks, including the PEPPA PIG Trademark.[6]   15 U.S.C. § 1116(a); *See also H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* 2017 U.S. Dist. LEXIS 207613, *14-15 (N.D. Ill. Dec. 18, 2017) (granting plaintiff's request for a permanent injunction barring defendant from advertising, offering for sale, and selling counterfeit products).

As established above, Defendants are liable for trademark counterfeit as a matter of law. In addition, the Seventh Circuit has clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no legal remedy.  *See Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th

---

[6] This includes the trademarks listed in paragraph 11 of the Amended Complaint [10].

Cir. 2013) ("irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)"); *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001).

Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the PEPPA PIG Trademark. [PSF 20]. Accordingly, the goodwill associated with the PEPPA PIG Trademark is of incalculable and inestimable value to Plaintiff. [PSF 18, 19, 20]. Defendants' attempt to "piggyback" off Plaintiff's efforts, through the unauthorized use of the PEPPA PIG Trademark, has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales.

The extent of the harm to Plaintiff's reputation and the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage without the preliminary injunction. "Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation." *Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1249 (D. Oregon 2016) (citing McCarthy on Trademarks § 30:46).

16

Plaintiff has shown an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. In that case, Plaintiff would be prevented from realizing its right to final equitable relief of an accounting of profits and statutory damages, and would be irreparably harmed. As such, an asset restraint is proper and the balance of harms remains in Plaintiff's favor.

Courts have the inherent authority to issue an asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007); *Lorillard,* 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). Plaintiff seeks equitable relief. Section 35 of the Lanham Act provides that a plaintiff in a trademark infringement case shall be entitled "**subject to the principles of equity**, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive **the court may in its discretion** enter judgment for such sum **as the court shall find to be just**, according to the circumstances of the case." *Id*. Additionally, subsection (c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages….**as the court consider just**." 15 U.S.C. § 1117(c) (emphasis added).

Even though Defendants' PayPal accounts have received over $100,000, only $399 is currently restrained. [PSF 54]. As such, it is highly likely that Defendants will swiftly move the current balance of $399 out of their PayPal accounts and outside of the United States if the asset restraint is not in place. Defendants have provided no evidence that they have identifiable assets in the United States other than their PayPal accounts. [PSF 51]. The burden lies with Defendants

to present documentary proof that particular assets are not the proceeds of counterfeiting activities. *Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* 2015 U.S. Dist. LEXIS 78961, at *11 (N.D. Ill. June 18, 2015) (citations omitted).  Defendants refused to provide sales records for the 6guys9 and luckyjerryxiang eBay stores (other than records of the cookie cutters purchased by Plaintiff's investigators).  [PSF 47].  Defendants have failed to provide any information regarding other transactions, such as a product title or image.  [PSF 49].  *See Gianni Versace, S.p.A. v. Zou Yulan, et al*., No. 17-cv-07869 (N.D. Ill. Nov. 1, 2017) (Docket No. 52).  Moreover, Defendants, despite being served with discovery requests, have not answered whether or not they operate other stores, use other PayPal accounts, or have any systems in place to detect and prevent the sale of counterfeit goods.  [PSF 44-53].

Given Defendants' willful actions, and failure to disclose the nature of the products they sold, Defendants should be given little equitable consideration.  In assessing the risk of irreparable harm to Defendants, the Court should "exclude any burden it voluntarily assumed by proceeding in the face of a known risk."  *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 U.S. Dist. LEXIS 144660, at *28 (N.D. Ill. Oct. 19, 2016).  Courts have regularly denied similar attempts by counterfeiters to evade asset restraints, and this Court should do the same.  *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) ("Defendants have not submitted any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities."); *River Light V, L.P., et al. v. Zhangyali, et al.*, No. 15-cv-05918 (N.D. Ill. Sept. 9, 2015) (Docket No. 46) (denying motion to reduce asset restraint against China based Internet store).  Accordingly, the balance of harms favors Plaintiff with respect to the asset restraint.

18

## V. eONE IS ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods.  15 U.S.C. § 1117(b).  *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A.,* 2015 U.S. Dist. LEXIS 140606, at *9-10.  Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances.  *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, at *31-33 (N.D. Ill. July 11, 2005).  eOne respectfully requests entry of an award of its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b) because Defendants knowingly and willfully advertised, offered for sale, and sold Counterfeit Peppa Pig Products.

## VI. CONCLUSION

For the foregoing reasons, eOne respectfully requests that this Court enter an order granting summary judgment against Defendants for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III).  eOne requests that this Court award eOne statutory damages of at least one hundred thousand dollars ($100,000) from each of the Defendants, enter a permanent injunction prohibiting Defendants from advertising, offering for sale, and/or selling products using the Peppa Pig trademarks, including the PEPPA PIG

Trademark,[7] and award eOne its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b). Finally, eOne requests that the Preliminary Injunction remain in place.

Dated this 20th day of December 2018.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiff Entertainment One UK Ltd.*

---

[7] This includes the trademarks listed in paragraph 11 of the Amended Complaint [10].

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case, and to Defendants' email addresses 1228056238@qq.com and Luckyjohnfeng@gmail.com.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiff Entertainment One UK Ltd.*

21