IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., | |
| Plaintiff, | Case No. 18 C 4461 |
| v. | Judge Harry D. Leinenweber |
| 2012SHILIANG, *et al.,* | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case arises from the unauthorized sale of counterfeit merchandise through various online seller accounts. For the reasons stated herein, Defendants' Motions to Terminate Preliminary Injunction (Dkt. Nos. 78, 79) are denied, and Plaintiff's Motion for Summary Judgment (Dkt. No. 86) is granted.

### I. BACKGROUND

Plaintiff Entertainment One UK Ltd. is a company organized under the laws of the United Kingdom. (Pl.'s Statement of Facts ("SOF") ¶ 1, Dkt. No. 88.) Plaintiff develops, produces, and distributes entertainment content, including the "Peppa Pig" brand. (SOF ¶ 2.) Peppa Pig is a popular animated television series aimed at preschoolers. (SOF ¶¶ 3, 11.) Plaintiff owns several U.S. federal trademark registrations for its Peppa Pig property; two are relevant in this case. The first is U.S. Registration

No. 4,872,348 ("the '348 mark") for the word mark "PEPPA PIG." (SOF ¶ 14.) The second is U.S. Registration No. 4,783,931 ("the '931 mark"), a design mark of Peppa Pig herself—a stylized pig wearing a dress. (SOF ¶ 15.) The Court will refer to the trademarks collectively as the "Peppa Pig trademarks."

Plaintiff initiated this case in 2018 by suing over 400 online retail stores. (*See* Schedule A Defendants, Ex. 2 to Pl.'s Am. Compl., Dkt. No. 10-2.) Plaintiff alleged that those 400 Defendants were willfully manufacturing, distributing, and selling counterfeit versions of Peppa Pig trademarked and/or copyrighted designs. The Court entered a temporary restraining order, prohibiting all Defendants from using, reproducing, selling, and shipping Plaintiff's trademark and copyright material. The Court later converted the temporary restraining order to a preliminary injunction, which is still in place.

The Court has since entered default judgment against most Defendants, and others have been voluntarily dismissed. The case remains pending against only two Defendants: an eBay store named "luckyjerryxiang," and an eBay store named "6guys9" (collectively herein after, "Defendants"). Defendants both sold a product that they named "Peppa Pig Head Cookie Cutter," which is, as the name implies, a cookie cutter shaped in the outline of Peppa Pig's head. (SOF ¶¶ 22-24, 27-28.) Both Defendants accepted payment for the Peppa Pig cookie cutter via PayPal and shipped the product to

Illinois. (SOF ¶¶ 25-26, 30-31.) Defendants are not authorized retailers of Peppa Pig products. (SOF ¶ 36.) Defendants have filed nearly identical pleadings to date, but it appears that each store is operated by a separate person. 6guys9 is operated by HaiJie Lin, and luckyjerryxiang is operated by Jian Feng; both individuals are located in the People's Republic of China. (SOF ¶¶ 4-5.)

Plaintiff now moves for summary judgment against Defendants for: (1) willful federal trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125; and (3) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a). Plaintiff further requests a statutory damages award of at least $100,000 from each Defendant; attorneys' fees and costs; and a permanent injunction enjoining Defendants from violating Plaintiff's rights in the Peppa Pig trademarks. Defendants move to terminate the preliminary injunction.

## II.  LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The party

seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

### III.  **DISCUSSION**

#### A.  **Summary Judgment**

##### 1.  **Statement of Facts**

As an initial matter, the Court will address Plaintiff's Statement of Facts and Defendants' response, or lack thereof. The Local Rules of the Northern District of Illinois require the party moving for summary judgment to submit a statement of undisputed material facts. *See* N.D. Ill. L. R. 56.1. When the opposing party fails to controvert the moving party's statement in the manner dictated by Local Rule 56.1, those facts are deemed admitted for the purpose of the summary judgment motion. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Plaintiff submitted a proposed list of 54 undisputed material facts, each supported by citation to the record, in accordance with Rule 56.1. In response, Defendants filed documents titled "Defendant Statement of Material Facts" that each contained two brief factual assertions. (*See* Dkt. Nos. 94, 98.) Defendants did not, as the Local Rules require,

respond to each numbered paragraph in Plaintiff's Statement of Material Facts.

Defendants are representing themselves *pro se,* and the Court therefore construes their pleadings liberally. *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). However, the Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith,* 321 F.3d at 683. The Court cannot excuse the fact that Defendant failed to respond to Plaintiff's Statement of Material Facts. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Merely setting forth their own factual assertions does not constitute a rebuttal of Plaintiff's facts. *See id*. Thus, the Court will treat Plaintiff's Statement of Material Facts as admitted.

### 2. Trademark Infringement

The Court turns to the merits of Plaintiff's summary judgment motion. Plaintiff argues that Defendants violated Sections 32 and 43 of the Lanham Act, as well as the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Defendants are liable for trademark infringement and counterfeiting under Section 32 of the Lanham Act if they, "without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services on or in connection with which such use is likely to cause

confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A defendant is liable for false designation of origin under Section 43 if it, "on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). The UDTPA prohibits the following activities, among others, as deceptive trade practices: (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; and (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 ILCS 510/2(a).

Plaintiff must establish the same two elements for all of its Lanham Act and UDTPA claims: (1) that it has a protectable trademark; and (2) that Defendants' use of the trademark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 n.8 (7th Cir. 2001); *Monster Energy Co. v. Zheng Peng*, No. 17-CV-414, 2017 WL 4772769, at *3 (N.D. Ill. Oct. 23, 2017) (citation omitted).

First, Plaintiff owns protectable trademarks. Both the '348 and '931 marks are registered with the U.S. Patent and Trademark

Office on the Principal Register. (SOF ¶¶ 14-16.) Such registry constitutes *prima facie* evidence of the validity of Plaintiff's registered trademarks and of Plaintiff's exclusive right to use the trademarks. 15 U.S.C. § 1057(b). Defendants do not contest the registration of Plaintiff's trademarks, nor the validity of such marks. Accordingly, the Court finds that there is no genuine issue regarding the fact that Plaintiff's Peppa Pig trademarks are protectable. *See Monster Energy Co.*, 2017 WL 4772769, at *4.

Next, Plaintiff must establish that Defendants' use of the Peppa Pig trademarks is likely to cause confusion among consumers. The Seventh Circuit has set forth seven factors to determine whether a likelihood of confusion exists. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). However, the Seventh Circuit also held, in a non-precedential opinion, that courts can presume likelihood of confusion where a defendant "produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product." *Microsoft Corp. v. Rechanik*, 249 Fed. App'x. 476, 479 (7th Cir. 2007) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Given that the Seventh Circuit established the presumption in a non-precedential opinion, the Court will first analyze the facts under the presumption, and then under the full seven factor test. *See Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 WL 2402922, at *4-5 (N.D. Ind. May 31, 2013) ("This . . . is

plainly a case for presuming likelihood of confusion. But in an abundance of caution, [the Court] will take a belt-and-suspenders approach . . . and proceed with the seven-factor analysis to determine whether there is a likelihood of consumer confusion.").

### 3. Likelihood of Confusion: Presumption Test

Under the shortened test, a court presumes likelihood of confusion when a defendant has produced counterfeit goods in an attempt to capitalize on the popularity of another's product. *Microsoft*, 249 Fed. App'x. at 479. In order to be "counterfeit," the goods must have been produced by an entity that was not authorized to use the mark at the time the goods were manufactured. 15 U.S.C. § 1116(d)(1)(B). Plaintiff never authorized Defendants to use Peppa Pig trademarks. (SOF ¶ 36.) Additionally, counterfeit goods must bear "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The PEPPA PIG word mark was not imprinted directly on the cookie cutters at issue; however, Defendants used that exact mark in the product's name: "Peppa Pig Head Cookie Cutter." (SOF ¶¶ 22, 27.) And a protected mark need not appear *on* an item to render it counterfeit; rather, the Lanham Act only requires that the protected mark be used "in connection with" the sale. 15 U.S.C. § 1114(1)(a). *See Chloe SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-04147, 2014 WL 4402218, at *7 (C.D. Cal. Sept. 5, 2014) (finding that using a word mark in the title of a sale listing constitutes

counterfeiting even if the word mark is not located on the product offered for sale); *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 255 (S.D.N.Y. 2015) (finding counterfeiting as a matter of law when defendant used the word "Tiffany" on display sign next to rings stamped with generic marks, because "[t]here is no statutory requirement that the counterfeit mark be placed on the product itself").

Furthermore, the shape of the cookie cutters—an outline of the Peppa Pig character's head—is substantially indistinguishable from the '931 design mark. Apart from conclusory statements denying liability (*see* Def.'s Opp. at 6-7 ("The peppa pig head cookie cutter I made . . . did not infringe Peppa Pig trade mark.")), Defendants do not contest the similarity between their products and Plaintiff's trademarks. Indeed, Defendants repeatedly refer to their product as "the peppa pig head cookie cutter." (*See, e.g.*, Def.'s Opp. at 6.) Defendants used the precise '348 word mark on the product listing and used the '931 mark's likeness on the product itself. Accordingly, the Court finds as a matter of law that Defendant's cookie cutters are counterfeit.

The Court further finds that Defendants produced these counterfeit goods in an attempt to capitalize upon the popularity of Plaintiff's Peppa Pig product. Peppa Pig is a globally recognizable brand that includes a wide variety of licensed Peppa Pig products, from video games to kitchen utensils—the latter of

which Defendants chose to manufacture. (SOF ¶¶ 11-13.) Defendants offered the following explanation of their motivation for selling the cookie cutters: "When [we] created the peppa pig head cookie cutter, [we] just thought it was a lovely design, and the customer should be very happy if they could make peppa pig head cookies." (Def.'s Opp. to Summ. J. at 6, Dkt. No. 97.) As Defendants were well aware, consumers seek out the Peppa Pig brand, and Defendants created a product designed to profit from that demand. *See Coach*, 2013 WL 2402922, at *4. Because Defendant produced counterfeit goods in an attempt to capitalize on the demand for Plaintiff's product, the Court presumes a likelihood of confusion. *See Microsoft Corp.*, 249 Fed. App'x. at 479.

### 4. Likelihood of Confusion: Seven Factor Test

The seven factor test uses the following considerations to determine whether a likelihood of confusion exists: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone*, 543 F.3d at 929. No single factor is dispositive. *Id*. Courts may assign varying weight to each of the factors depending on the facts presented, though usually the

similarity of the marks, the defendant's intent, and actual confusion are particularly important. *Id.*

The first factor is assessed by viewing the similarity of the marks as a whole, not from their "elements separated and considered in detail." *AutoZone*, 543 F.3d at 929. The test is whether the viewer of an accused mark would be likely to associate the product with which it is connected with the source of products with which an earlier mark is connected. *Id.* at 930. The public would associate Defendants' cookie cutters with Plaintiffs because Defendants used Plaintiff's exact PEPPA PIG word mark in the name of their product. Additionally, the shape of Defendants' product clearly mimics Plaintiff's design mark. This factor favors Plaintiff.

The test for the second factor is whether the parties' products "are the kind the public might very well attribute to a single source (the plaintiff)." *Id.* at 931. Consumers are likely to attribute similar products to a single source when the parties compete in the same market, targeting similar consumers. *AutoZone*, 543 F.3d at 932. Plaintiff sells a wide variety of Peppa Pig branded products, including Peppa Pig kitchen utensils. (SOF ¶ 12.) A Peppa Pig cookie cutter is the type of product Plaintiff might sell. Therefore, a reasonable consumer might believe that Plaintiff produced the product Defendants sold. *AutoZone*, 543 F.3d at 932. This factor weighs in favor of consumer confusion.

The third factor assesses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Id.* (citation omitted). Defendants sold the infringing products online. Plaintiffs sell Peppa Pig products both online and in brick and mortar retail stores. (SOF ¶¶ 12-13.) Thus, both parties target the same customer base: people looking to purchase Peppa Pig products online. *See AutoZone*, 543 F.3d at 932; *Coach*, 2013 WL 2402922, at *5. Defendants—who characterize themselves as "small Chinese online merchants"—argue that their scale is so insignificant that they should not be held liable. However, small merchants are just as liable for trademark infringements as larger entities. *AutoZone*, 543 F.3d at 932 (holding that courts do not "condition infringement on the sale of the parties' respective operations"); *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989) ("[T]he trademark laws do not excuse modest infringements by petty pirates."). The third factor favors Plaintiff.

The fourth factor involves examining the degree of care likely to be exercised by purchasers of Plaintiff's authentic Peppa Pig merchandise and by purchasers of Defendants' counterfeit products, to determine whether either group would be confused by Defendants' cookie cutters. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 682 (7th Cir. 2001). The general rule guiding this factor is "the more widely accessible and inexpensive the products . . . the more

likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (citation omitted). Luckyjerryxiang sold its cookie cutter for approximately $5; 6guys9 for approximately $7.55. (SOF ¶¶ 24, 29.) Because the products were widely accessible for anyone to purchase on eBay, and sold at a low price point, this factor weighs in Plaintiff's favor.

Under the fifth factor, "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." *Id*. at 933 (citation omitted). The Peppa Pig brand is globally recognized. The television show first aired in 2004 and has since been translated into 40 languages and broadcast around the world. (SOF ¶ 11-13.) Plaintiff has established that its marks are strong, as evidenced by the fact that it spends millions of dollars annually in advertising, marketing, and promoting its goods bearing the marks. (SOF ¶ 20.) *See Coach*, 2013 WL 2402922, at *7. Defendants do not dispute the strength of Plaintiff's marks. This factor favors Plaintiff.

The sixth factor assesses whether there is any evidence of actual consumer confusion. Defendants dispute that actual confusion exists, pointing out that the same or similar cookie cutters (likely counterfeit) are listed for sale in other eBay shops. They contend that their cookie cutters do not create a likelihood of confusion among consumers because the market is full

of other fakes. However, the prevalence of other counterfeit Peppa Pig products for sale online increases, not decreases, the odds of actual consumer confusion. Defendants further argue that the other counterfeit cookie cutters do not have online reviews that indicate consumers are confused about the origins of the product. But a lack of customer feedback questioning whether the products are counterfeit may support the existence of actual consumer confusion, if consumers believe the counterfeit products are genuine. Although Defendants arguments are unavailing, Plaintiff does not present any evidence of actual confusion. Therefore, this factor weighs in Defendants' favor.

The seventh and final factor focuses on evidence that a defendant attempted to pass off its product as having come from the plaintiff. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015). Evidence of "bad faith intent" to confuse is particularly relevant. *Id.* Here, the Court can infer that Defendants intended to pass off their products as coming from Plaintiff because they named their product "Peppa Pig Head Cookie Cutter." The Court further infers an intent to confuse because the PEPPA PIG word mark that Defendants used is a senior mark that has attained great notoriety. *AutoZone*, 543 F.3d at 934 (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) (holding that courts can infer bad faith when "the senior user's trademark is so well-known" and the junior user chooses "a confusingly

similar mark, out of the infinite number of marks in the world")).
Thus, the Court finds that the seventh factor supports Plaintiff.

In sum, of the seven factors, only one—actual consumer
confusion—is lacking. Although evidence of actual confusion, if
available, is entitled to substantial weight in the likelihood of
confusion analysis, "this evidence is not required to prove that
a likelihood of confusion exists." *CAE*, 267 F.3d at 685. When
balancing the seven factors, it is clear that Defendants'
counterfeit Peppa Pig cookie cutters were likely to create
confusion among consumers. Accordingly, the Court grants
Plaintiff's Motion for Summary Judgment on trademark infringement
and counterfeiting; false designation of origin; and deceptive
trade practices under the UDTPA.

## B. Statutory Damages

Section 35 of the Lanham Act authorizes statutory damages for
trademark counterfeiting. 15 U.S.C. § 1117. Plaintiffs ask the
Court to award a total of $200,000 in statutory damages—$100,000
per Defendant. A plaintiff can seek statutory damages between
$1,000 and $200,000 per counterfeit mark per type of goods or
services sold, offered for sale, or distributed. 15 U.S.C.
§ 1117(c)(1). If the court finds that the use of the counterfeit
mark was willful, the damages limit increases to $2,000,000 per
counterfeit mark per type of goods or services sold, offered for
sale, or distributed. 15 U.S.C. § 1117(c)(2).

Plaintiff asserts that Defendants' trademark counterfeiting was willful. Defendants dispute this, arguing that they "never meant to make [a] counterfeit product," and merely created the cookie cutter because they "thought it was a lovely design" that customers would enjoy. (Def.'s Opp. to Summ. J. at 6.) A court may attribute willful infringement to a defendant's actions when the defendant "had knowledge that [its] conduct constituted infringement or where [it] showed a reckless disregard for the owner's rights." *Luxottica Grp. S.p.A. v. Li Chen*, No. 16 C 6850, 2017 WL 836228, at *2 (N.D. Ill. Mar. 2, 2017) (citation omitted). A defendant's knowledge can be inferred from conduct. *Id.* In this case, Defendants' conduct evidences willfulness. Defendants designed and manufactured the product themselves using a 3D printer. (*See* Defendants' Admissions, Ex. 5 to Martin Declaration, Dkt. No. 90-5.) Furthermore, Defendants have a long history of experience selling on eBay—luckyjerryxiang for ten years, and 6guys9 for five years. Despite their extensive experience selling online, Defendants conducted no due diligence to determine whether they were selling counterfeit goods. (SOF ¶ 53; Def.'s Opp. to Summ. J. at 6.) This shows a reckless indifference to the trademark owner's rights. *Light v. Zhangyali*, No. 15 CV 5918, 2016 WL 4429758, at *3 (N.D. Ill. Aug. 22, 2016) ("Performing no due diligence of its own . . . shows a reckless indifference to the trademark owner's rights."). Thus, Defendants' infringement was

willful, which calls for a higher damages award to penalize Defendants and deter future infringement. *See id.*

The Lanham Act advises that the amount of statutory damages should be "as the court considers just." 15 U.S.C. § 1117(c). Courts analogize case law applying 17 U.S.C. § 504(b), the statutory damages scheme for copyright infringement, to determine trademark infringement damages. *See Light*, 2016 WL 4429758, at *3. In *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991), the Seventh Circuit held that courts enjoy "wide discretion" in determining statutory damages figures under § 504(b), and are "not required to follow any rigid formula." *Chi-Boy Music*, 930 F.2d at 1229. Courts may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id*.

Several facts weigh in favor of a large damages award. Defendants sold their counterfeit goods online. As this Court has held in the past, online counterfeit sales enable a defendant to reach a "vast customer base," and may justify a substantial damages award. *Luxottica*, 2015 WL 3818622, at *3 (quoting *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.*, No. 07 CIV. 3997, 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010) (collecting cases)). Courts should also consider a plaintiff's efforts to protect, promote, and enhance a brand's value. *Lorillard Tobacco Co. v.*

*S & M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *6 (N.D. Ill. Nov. 8, 2004). Plaintiff has expended millions of dollars promoting its trademarks and makes a substantial effort to protect its Peppa Pig brand by continuously enforcing its trademark rights in litigation. (SOF ¶¶ 20-21.) Additionally, because Defendants' counterfeiting was willful, the statutory damages award may be designed to penalize the infringer and to deter future violations. *Chi-Boy Music*, 930 F.2d at 1229-30.

Defendants argue that a statutory damages award of $100,000 per Defendant is excessive, given their low sales volume of the counterfeit product. Each Defendant claims to have sold only one Peppa Pig cookie cutter—to Plaintiff's investigator. This coincidence strains credibility. Regardless, statutory damages must "bear some relation" to actual damages. *Luxottica*, 2015 WL 3818622, at *2 (citation omitted). The Seventh Circuit has held that "the amount of harm that the infringer inflicts goes to the amount of damages." *Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989).

Though actual damages are difficult to determine in the infringement context, *Chi-Boy Music*, 930 F.2d at 1229, the evidence as it stands does not indicate that Defendants' counterfeit goods significantly harmed Plaintiffs. Defendants sold their cookie cutters for $5 to $7.55 apiece. (SOF ¶¶ 24, 29.) PayPal records indicate that luckyjerryxiang's account received over $73,000

since its inception, and 6guys9's account over $28,000, but the records do not delineate what the payments were for. (SOF ¶ 54.) The Court cannot assume that the payment history exclusively or even significantly represents payments for the counterfeit goods. Plaintiff has not presented any evidence that Defendants are large-scale manufacturers. *See Coach, Inc. v. Tom's Treasure Chest*, No. 2:10-CV-00243, 2011 WL 4399355, at *3 (N.D. Ind. Sept. 21, 2011) ("Courts often look to the size and scope of the defendant's operation to determine an appropriate baseline for damages."). Indeed, Defendants' method of production consisted of 3D printing each cookie cutter individually after receiving an order, which indicates a rather small-scale operation. Furthermore, although Defendants' discovery disclosures were halfhearted, Defendants' willful infringement is somewhat mitigated by the fact that they chose to respond to this action rather than defaulting. *See Light*, 2016 WL 4429758, at *4.

Because this is not a case of default, and based on the mitigating factors identified above, the Court finds it appropriate to reduce the statutory damages Plaintiff seeks by one-half. Pursuant to 15 U.S.C. § 1117(c), the Court awards Plaintiff statutory damages in the amount of $50,000 per Defendant, for a total award of $100,000.

## C. Attorneys' Fees and Costs

Plaintiffs seek costs and attorneys' fees. As the prevailing party, Plaintiff is entitled to costs under Federal Rule of Civil Procedure 54(d)(1). The Lanham Act allows for attorneys' fees in "exceptional" cases, 15 U.S.C. § 1117(a), which encompasses cases in which the acts of infringement are "malicious, fraudulent, deliberate or willful." *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Section 35 of the Lanham Act states that courts "shall" award attorneys' fees in cases involving the intentional use of a counterfeit mark in connection with the sale of goods, unless the court finds extenuating circumstances. 15 U.S.C. § 1117(b) Given Defendants' willful infringement, and the absence of extenuating circumstances, Plaintiff is entitled to reasonable attorneys' fees in an amount to be determined by the Court.

## D. Preliminary and Permanent Injunction

Defendants have moved to terminate the preliminary injunction. The Court has already dispatched most of the arguments that Defendant used against the preliminary injunction, including conclusory statements denying counterfeiting, only having sold one cookie cutter each, and never having damaged Plaintiff's business. However, Defendants also object to the preliminary injunction's asset freeze, which the Court will address. The preliminary injunction ordered all third-party providers to restrain "all

accounts and funds connected to Defendants or Defendants' Online Marketplace Accounts . . . that are not U.S. based" from transferring money until further ordered by the Court. (Preliminary Injunction Order ¶ 5, Dkt. No. 39.) PayPal froze Defendants' accounts, for a combined restrained balance of approximately $400. (SOF ¶ 54.) It appears to the Court that this is the extent of Defendants' accounts that have been frozen thus far.

Defendants argue that the asset freeze is damaging their online business and ask the Court to lift it. To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Luxottica*, 2015 WL 3818622, at *5 (citing *N. Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ 9083, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006)). Defendants have provided no such proof, other than asserting that they each sold only one cookie cutter. Such a conclusory statement "plainly does not qualify as documentary proof" that Defendants' PayPal accounts contain no proceeds from their counterfeiting activities. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No. 16-CV-10096, 2017 WL 6733685, at *6 (N.D. Ill. Dec. 18, 2017). Accordingly, the Court denies Defendants' motion to terminate the preliminary injunction and lift the asset freeze. *See id.*

Plaintiff also seeks a permanent injunction barring Defendant from advertising, offering for sale, and/or selling counterfeit Peppa Pig products; otherwise violating Plaintiff's rights in its Peppa Pig trademarks; and imposing an ongoing asset restraint. The Lanham Act enables district courts to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must show that: (1) it has suffered an irreparable injury; (2) legal remedies, such as monetary damages, cannot adequately compensate for that injury; (3) the balance of hardships between the parties warrants an equitable remedy; and (4) a permanent injunction would not harm the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The first two requirements, irreparable harm and inadequate remedy at law, are presumed in trademark infringement cases. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016) (collecting cases). The second two elements are easily met as well. There is "no harm to Defendants to being enjoined from violating the law," and eliminating potential consumer confusion serves the public interest. *Light*, 2016 WL 4429758, at *4. Accordingly, the Court grants Plaintiff's request for a permanent injunction and continued asset restraint.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motions to Terminate Preliminary Injunction (Dkt. Nos. 78, 79) are denied, and Plaintiff's Motion for Summary Judgment (Dkt. No. 86) is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 5/2/2019